IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROSE THOMAS,

      Plaintiff,

      v.

FORD MOTOR COMPANY,

      Defendant.

No. 21-cv-6000

Judge Franklin U. Valderrama

**ORDER**

Plaintiff Rose Thomas (Thomas) worked at Defendant Ford Motor Company (Ford) as an assembly-line worker. After Thomas failed to report back to work following a medical leave, Ford terminated her employment. Thomas, an African American woman, sued Ford for sexual harassment (Count I), gender discrimination (Count II), retaliation in violation of Title VII of the Civil Rights Act of 1984 (Count III), state common law battery (Count VI), and state common law assault (Count V).[1] R. 8, Am. Compl. ¶¶ 24–93.[2] Ford moves for summary judgment under Federal Rule of Civil Procedure 56. R. 51, Mot. Summ. J. For the reasons set forth below, Ford's motion is granted.

---

[1]Thomas's Amended Complaint also asserts a claim for intentional infliction of emotional distress (Count VI). However, this claim is included only to preserve it for purposes of appeal and is not at issue in the instant motion. Am. Compl. at 16; R. 51, Mot. Summ. J. at 1 n.1.

[2]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

## Procedural Background

On August 24, 2023, Ford filed its motion for summary judgment, its memorandum in support of that motion, and its statement of facts. R. 51–53. Thomas's response was due on or before October 5, 2023. R. 50. Thomas, however, failed to respond to Ford's statement of facts or Ford's motion for summary judgment. Ford argues the Court should deem its statement of facts admitted for the purposes of the instant motion due to Thomas's failure to respond. R. 58, Reply at 2. The Court agrees.

Local Rule 56.1 governs summary judgment briefing in the Northern District of Illinois. When "a party moves for summary judgment in the Northern District of Illinois, it must submit a memorandum of law, a short statement of undisputed material facts, and copies of documents (and other materials) that demonstrate the existence of those facts." *ABC Acq. Co., LLC v. AIP Prods. Corp.*, 2020 WL 4607247, at *7 (N.D. Ill. Aug. 11, 2020) (citing L.R. 56.1). A party's statement of undisputed material facts must cite to specific pages or paragraphs of the documents and materials in the record. *Id.* (citing *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 818 (7th Cir. 2004)).

Under Local Rule 56.1(b) and (e), the nonmovant must counter with a response to the separate statement of facts, and either admit or deny asserted facts. "To dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." L.R. 56.1(e)(3). "When a responding party's statement fails to dispute the facts set

2

forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015); *see also Daniels v. Janca*, 2019 WL 2772525, at *1–2 (N.D. Ill. July 2, 2019). The Seventh Circuit has "repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings." *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011).

Here, Ford filed a statement of undisputed material facts (statement of facts) with its motion for summary judgment, which included a proper citation to the evidentiary material supporting each fact. R. 53, DSOF. Because Thomas is a *pro se* litigant, Ford also served her with a "Notice to An Unrepresented Litigant Opposing Summary Judgment" (Notice) as required by Local Rule 56.2. R. 56. The Notice explains the meaning of a motion for summary judgment and the requirements for responding to the movant's motion and statement of facts. The Notice also details the consequences of failing to respond to a summary judgment motion and statement of facts under Federal Rule of Civil Procedure 56 and Local Rule 56.1.

Thomas did not file a response to the motion for summary judgment or Ford's statement of facts. A plaintiff's *pro se* status does not excuse her from complying with federal and local procedural rules. *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("[E]ven pro se litigants must follow procedural rules."). The Court thus deems Ford's statement of facts admitted. *Smith v. Lanz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by

local rules results in an admission."). This, however, does not guarantee the Court will grant Ford's motion for summary judgment, as Ford must still establish it is entitled to judgment as a matter of law.

## Background

The following facts are set forth favorably to Thomas, the non-movant, as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012); *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 937 (7th Cir. 2003). Although the Court draws all reasonable inferences from the facts in Thomas's favor, the Court does not vouch for these facts. *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015) (citation omitted); *see Knopick v. Jayco, Inc.*, 895 F.3d 525, 527 (7th Cir. 2018) (citation omitted) ("Given this summary judgment lens, we do not vouch for the objective truth of all of these facts.").

Thomas is an African American woman over the age of 50 years old. DSOF ¶ 2. Thomas began her employment with Ford at its Chicago Assembly Plant (CAP) on August 16, 2012. *Id.* ¶ 1. Ford first hired Thomas as a long-term supplemental employee and eventually transitioned Thomas into an hourly entry-level employee on the manufacturing floor. *Id.* ¶ 3. Hourly workers at CAP are unionized, and Thomas's employment was governed by the collective bargaining agreement between Ford and the United Auto Workers Union (UAW). *Id.* ¶ 4.

## I.    Workplace Conflict with Potter

Shortly after starting her employment at CAP, Thomas began having issues with her Team Leader, Tracy Potter (Potter). DSOF ¶ 19. In particular, Thomas

4

claimed Potter had snatched a paint brush from Thomas's hand and yelled at her repeatedly. *Id.* Thomas reported this incident to her union representative, Marcus Carpenter (Carpenter). *Id.*

In June 2013, Thomas and Potter continued to have issues; Potter was unhappy with Thomas's performance because Thomas was "missing tasks" on the job. DSOF ¶ 20. On June 16, 2013, Thomas informed her Labor Relations representative Catina McCoy (McCoy) that she and Potter were having difficulties. *Id.* ¶ 21. Five days later, McCoy informed Carpenter, production supervisor Batesta Snow, and manager Marvin Chones (Chones) of these issues. *Id.* ¶ 22. Specifically, McCoy relayed that Thomas "claimed that Potter follows [her] around and communicates poorly with team members." *Id.* According to Carpenter, Thomas also complained that Potter was "not nice" or "mean" to her. *Id.* ¶ 55.

Due to the friction between Thomas and Potter, Thomas began reporting to another supervisor, Paula Gallon in July 2013, who kept Thomas away from Potter's department. DSOF ¶ 23. On July 27, 2013, Labor Relations representative McCoy met with Thomas and told Thomas that her complaint concerning Potter had been handled. *Id.* McCoy instructed Thomas to submit a written statement if further incidents should occur. *Id.*

Thomas claims that in October 2013, she was moved to the same department as Potter and experienced anxiety attacks and high blood pressure as a result. DSOF ¶ 24. Thomas subsequently went on medical leave from October 11, 2013 to October 31, 2013. *Id.* On October 12, 2013, Thomas contacted McCoy and stated she was not

coming into work due to her issues with Potter. *Id.* ¶ 25. Thomas also expressed her desire to be moved to a different department. *Id.* On October 21, 2013, Thomas spoke with Anne Marie Zore (Zore) of HR-Vehicle Operations about her issues with Potter. *Id.* ¶ 26. Thomas informed Zore that Potter was "always looking at her" and was improperly influencing the jobs to which Thomas was assigned. *Id.*

On November 15, 2013, Thomas submitted her first written complaint in the form of a letter to Ford's Labor Relations department. DSOF ¶ 27. In this letter, Thomas stated that Potter had been harassing her from the moment Thomas began working at CAP, and that this harassment caused Thomas to suffer anxiety and high blood pressure. *Id.* Thomas's letter "did not mention any claims of sexual harassment, gender discrimination, assault, or battery." *Id.* ¶ 28. Ford investigated Thomas's claims, interviewed Potter and three hourly employees, and requested information from "at least two salaried supervisors." *Id.* ¶ 29. Potter denied all allegations. *Id.* Ultimately, Ford was unable to confirm Thomas's allegations against Potter and "closed out the complaint." *Id.* ¶ 31.

Thomas's last day at CAP was January 5, 2014. DSOF ¶ 32. After this date, Thomas was out on medical leave due to work-related anxiety and depression. *Id.* ¶¶ 32–33. On February 11, 2014, Thomas called Ford's harassment hotline and complained about Potter, alleging that Potter would "stand[] behind [Thomas], laughing at her, taking her picture, and making faces at [Thomas] while [Thomas] is doing her job." *Id.* ¶ 33.

In March 2014, Thomas completed an Equal Employment Opportunity Commission (EEOC) questionnaire, asserting age discrimination and retaliation against Ford. DSOF ¶ 34. On April 15, 2014, Thomas's then counsel sent a letter to Ford complaining of age discrimination against Thomas. *Id.* ¶ 35. Neither the EEOC questionnaire nor the letter contained any allegations regarding sexual harassment, gender discrimination, retaliation, or assault/battery. *Id.* Additionally, during her October 2014 EEOC interview, Thomas did not raise any sexual harassment or gender discrimination allegations. *Id.* ¶ 37. In fact, Thomas specifically denied hearing "any sexual comments, remarks, [or] jokes," denied that "anyone touched [her] in an inappropriate manner," and denied seeing "any sexual pictures." *Id.*

## II.     Thomas's Termination

Thomas last reported to CAP on January 5, 2014, taking medical leave from January 6, 2014 to September 9, 2014. DSOF ¶¶ 32, 41. Per the terms of the collective bargaining agreement between Ford and the UAW, an hourly employee such as Thomas was subject to a five-day quit procedure at the end of an expired medical leave. *Id.* ¶¶ 38–39. Pursuant to this procedure, after the expiration of an hourly employee's medical leave, the employee must report to work or provide a satisfactory reason for her absence within five working days. *Id.* ¶ 40. On October 16, 2014, Ford sent Thomas a "five-day quit notice," which informed Thomas that she was required to return to work or provide a reason for not returning to work within five working days. *Id.* ¶ 41. Thomas admitted to receiving this five-day quit notice. *Id.* ¶ 42. However, Thomas did not report to work or otherwise respond to the five-day quit

notice. *Id*. Ford subsequently terminated Thomas's employment on October 25, 2014. *Id*. ¶ 41.

On February 9, 2015, Thomas filed a Charge of Discrimination with the EEOC against Ford alleging sex discrimination and retaliation under Title VII and disability discrimination. DSOF ¶ 43. On March 9, 2015, the EEOC issued Thomas a Notice of Right to Sue. *Id*.

On May 1, 2015, Thomas joined the *Van, et al. v. Ford Motor Co.*, No. 14-cv-8708 (N.D. Ill.) lawsuit alleging Title VII sexual harassment against women at CAP, serving as a putative class representative. DSOF ¶¶ 5, 43. Thomas's case was ultimately severed from the *Van* case after the district court denied class certification for the *Van* plaintiffs a second time. *Id*. ¶ 7.

## III.   Later Allegations of Sexual Harassment and Gender Discrimination

In 2017, years after her termination from Ford, during a deposition, Thomas made sexual harassment allegations against manager Chones, Myron Alexander (Alexander), Brian Hubbard (Hubbard), a co-worker named Larry, and an unnamed co-worker. DSOF ¶¶ 44, 50.

Regarding Chones, Thomas alleged he stared at her and made unwanted advances toward her, stating he liked watching her walk and that "if he didn't have his ring on his finger, he would have [Thomas]." DSOF ¶¶ 44–45. Thomas stated this conduct occurred sometime in 2013. *Id*. ¶ 44. Regarding Alexander, Thomas made two allegations: (1) Alexander grabbed her hand to show her how to sand a car and (2) Alexander said he could fire her, which Thomas interpreted as sexual. *Id*. ¶ 46.

Regarding Hubbard, Thomas stated he "stared at her, bumped into her as she got out of a vehicle and told [Thomas] that she would do what he says to do." *Id.* ¶ 47. Thomas interpreted such actions as sexual because as superintendent, Hubbard had authority over her. *Id.* Thomas did not identify the timeframe in which these incidents happened.

Thomas first claimed to have verbally reported the above harassment to Labor Relations representative McCoy. DSOF ¶ 48. Later, however, Thomas stated she reported her allegations against Hubbard and Chones to union representative Carpenter and reported her allegations against Alexander to an unnamed supervisor. *Id.* ¶ 49.

As for Thomas's co-worker Larry, Thomas alleged he put his arm around her without her consent, stating he wanted others to think he and Thomas were in a relationship. DSOF ¶ 50. Thomas claimed this incident occurred sometime in 2013. Mot. Summ. J., Exh. B-1 at Pl. Dep. 112:23. Thomas further alleged that an unnamed co-worker offered to show Thomas a photo of his genitalia. DSOF ¶ 50. Thomas did not identify the year in which this incident occurred.

In 2017, Thomas also asserted allegations of gender discrimination at her deposition, recalling an incident in which a male co-worker asked for the job to which Thomas was assigned, resulting in Thomas being reassigned. DSOF ¶ 51. However, Thomas was unable to recall if this co-worker was more senior than she—if so, he might have been entitled to her assignment. *Id.* ¶¶ 52–53. Thomas did not identify the year in which this incident occurred.

On November 9, 2021, Thomas filed this case individually against Ford. R. 1, Compl. Ford's fully briefed motion for summary judgment is now before the Court.

**Legal Standard**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

## Analysis

### I. Thomas's Title VII Claims for Sexual Harassment (Count I) and Gender Discrimination (Count II) are Time Barred

Ford argues that Thomas's claims for sexual harassment (Count I) and gender discrimination (Count II) are time-barred, as the alleged conduct underlying those claims occurred more than 300 days prior to Thomas filing her Charge of Discrimination. R. 52, Memo. Summ. J. at 5–6.

A plaintiff who wishes to bring a claim under Title VII alleging unlawful employment practices must file an administrative charge with the EEOC "within 300 days after the alleged unlawful employment practice occurred or else the employee may not challenge the practice in court." *Chaudhry v. Nucor Steel-Indiana*, 546 F.3d 832, 836 (7th Cir. 2008); *see also* 42 U.S.C. § 2000e-5(e)(1). However, Thomas's claims of sexual harassment and gender discrimination rest on a hostile-workplace theory and thus the "statute of limitations applies differently." *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 684 (7th Cir. 2010); Am. Compl. ¶¶ 24–53. "In a hostile-workplace claim, acts of harassment falling outside Title VII's statute of limitations may be considered as long as some act of harassment occurred within the limitations period." *Turner*, 595 F.3d at 681. "An employee need only file an EEOC charge within 300 days of the last hostile act in a continuous and ongoing hostile work environment." *Moore v. Vital Prod., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011); *Pruitt v. City of Chicago, Illinois*, 472 F.3d 925, 927 (7th Cir. 2006) ("[A] hostile environment is one wrong, and . . . an employee therefore may file the charge (under Title VII) . . . within the statutory time from the last hostile act."). If an act "contributing to that hostile

environment takes place within the statutory time period," a court may then consider "the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002); *Adams v. City of Indianapolis*, 742 F.3d 720, 730 (7th Cir. 2014). Thus, the question for the Court is whether *any* of the alleged incidents of sexual harassment or gender discrimination occurred within the statutory time period.

Ford asserts that Thomas filed her original Charge of Discrimination (the Charge) with the EEOC on February 9, 2015, as the Charge itself is stamped "RECEIVED EEOC FEB 09 2015 CHICAGO DISTRICT OFFICE." DSOF ¶ 43; Am. Compl., Exh. 1 (Thomas EEOC Charge). Although the Charge shows Thomas signed it on January 29, 2015, the Court has deemed Ford's statement of facts admitted due to Thomas's failure to respond to Ford's motion. Therefore, the Court considers the Charge filed as of February 9, 2015.[3] To comply with Title VII's 300-day statute of limitations, Thomas must show that an alleged act of sexual harassment or gender discrimination took place after April 15, 2014. She has not done so.

The only evidence that exists to support the claim that an act of sexual harassment or gender discrimination occurred after April 15, 2014 comes from Thomas's Charge.[4] In that Charge, Thomas makes the bare assertion that an act of

---

[3]Even if the Court considered Thomas's Charge to be filed as of January 29, 2015, the outcome would remain the same, as Thomas has not shown that an alleged act of sexual harassment or gender discrimination took place after April 4, 2015.

[4]Indeed, Thomas's own deposition testimony regarding the alleged sexual harassment states that it occurred "sometime in 2013." *See supra* Section III (Background).

discrimination last took place on "11-01-2014." Thomas EEOC Charge at 1. However, such a claim is implausible when Ford's statement of facts, to which Thomas has admitted, are considered. Based on those admitted facts, the last day Thomas was physically present at CAP was January 5, 2014. DSOF ¶ 32. "From that day until her separation from Ford in October 2014, [Thomas] was out of the plant, on medical leave." *Id*. There is no evidence that Thomas experienced any sexual harassment or gender discrimination after beginning her medical leave in January 2014. In fact, there is no evidence that any alleged incident of sexual harassment or gender discrimination took place past 2013. *See id*. ¶¶ 44–59. Further, Thomas was terminated on October 25, 2014 for failing to report back to CAP after her medical leave ended. *Id*. ¶ 41. As such, Thomas did not work for Ford as of November 1, 2014. Thomas's claim that the last act of discrimination took place on November 1, 2014 is therefore "too divorced from the factual record to create a genuine issue of fact." *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 721 (7th Cir. 2018); *see also McMahan v. Deutsche Bank AG*, 892 F.3d 926, 933 (7th Cir. 2018) ("The existence of merely a scintilla of evidence in support of the non-moving party's position is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party.") (quoting *Madison v. Frazier*, 539 F.3d 646, 652 (7th Cir. 2008)).

On these facts, the Court finds that no reasonable factfinder could conclude that any alleged act of sexual harassment or gender discrimination took place after April 15, 2014. Accordingly, Thomas's claims for sexual harassment and gender

13

discrimination are time-barred, and the Court grants Ford's motion as to Counts I and II.

As the Court has found Counts I and II time-barred, the Court need not address Ford's argument that those counts fail on the merits.

## II.     Thomas's Title VII Claim for Retaliation (Count III) Fails as a Matter of Law

Ford argues it is entitled to summary judgment on Thomas's retaliation claim under Title VII, because (1) Thomas failed to produce evidence that she engaged in a protected activity and (2) there is no causal link between any of Thomas's alleged protected activity and her termination pursuant to the administrative five-day quit procedure. Memo. Summ. J. at 13–14.

"Title VII prohibits an employer from retaliating against an employee for opposing or participating in an investigation of an unlawful employment practice." *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018) (citing 42 U.S.C. § 2000e-3(a)). To avoid summary judgment on her retaliation claim, Thomas "must offer evidence from which a reasonable jury could find: (1) she engaged in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." *Lesiv v. Illinois Cent. R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022) (cleaned up).[5] Thomas's evidence "must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself . . . ." *Ortiz v. Werner Enter., Inc.*, 834 F.3d 760, 765 (7th Cir.

---

[5]This Order uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

2016). Ultimately, the question the Court must answer is: "Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the discharge?" *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016); *see also Li v. Fresenius Kabi USA, LLC*, 110 F.4th 988, 994 (7th Cir. 2024).

Turning to the first element, statutorily protected activity "requires more than simply a complaint about some situation at work, no matter how valid the complaint might be." *Skiba*, 884 F.3d at 718 (cleaned up). "A complaint of discrimination is a protected activity under Title VII only if the discrimination is based on a protected characteristic . . . ." *Miller v. Chicago Transit Auth.*, 20 F.4th 1148, 1155 (7th Cir. 2021). "Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006).

Ford posits that Thomas's claim of protected activity is based on (1) her November 2013 letter to Labor Relations and (2) her February 11, 2014 hotline call. Memo. Summ. J. 14. And because neither Thomas's November 2013 letter nor her February 2014 hotline call "refer to sexual harassment, gender-based discrimination, or any other type of protected characteristic," Ford asserts they do not qualify as statutorily protected activity under Title VII. *Id.* However, Ford's statement of facts indicates that in 2017, Thomas claimed to have reported allegations of sexual harassment to Labor Representative McCoy while at CAP. DSOF ¶ 48. Ford's

statement of facts also indicates that in 2022, Thomas claimed to have reported allegations of sexual harassment to union representative Carpenter and to an unnamed supervisor while at CAP. *Id.* ¶ 49. Viewing Ford's statement of facts in the light most favorable to Thomas, the Court finds that Thomas engaged in statutorily protected activity.

Turning to the second element, Thomas must demonstrate a causal link between that protected activity and her termination. To sufficiently demonstrate causation, Thomas must provide evidence that Ford's "'desire to retaliate was the but-for cause of the challenged employment action.'" *Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1019 (7th Cir. 2016) (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013)). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 570 U.S. at 360.

Ford claims that Thomas was not terminated in retaliation for any discrimination-based complaints she may have made. Rather, Ford argues that Thomas's termination "was the result of a legitimate and non-retaliatory application of Ford's contractual notice to report process." Memo. Summ. J. at 14. The Court agrees. The reason for Thomas's termination is straightforward: after her medical leave expired, Thomas failed to report back to work. Thomas was an hourly employee. DSOF ¶ 3. As such, when Thomas's medical leave expired, she was "immediately subject to the five-day quit procedure upon expiration." *Id.* ¶ 39. The five-day quit procedure is "a routine contractual procedure . . . administered by CAP Labor

16

Relations, that does not involve input of production supervisors." *Id.* ¶ 38. Pursuant to the procedure and upon the expiration of Thomas's medical leave, Ford sent Thomas a "contractual notice to report, also known as a five-day quit notice" on October 16, 2014. *Id.* ¶ 41. To properly respond to this five-day quit notice, Thomas was "required to report for work or give a satisfactory reason for her absence within five working days." *Id.* ¶ 40. Despite receiving notice of this five-day quit notice, Thomas never returned to work or provided a reason for her absence. *Id.* ¶ 41. Accordingly, Thomas was terminated on October 25, 2014. *Id.* ¶ 40.

Ford's termination of Thomas for failing to respond to Ford's five-day quit notice constitutes a non-retaliatory, objective, facially legitimate business decision. Thomas has presented no evidence challenging Ford's stated reason for her termination and has presented no evidence that but-for her complaints of discrimination, she would not have been fired. Even when viewing the evidence in the light most favorable to Thomas, the Court finds that no reasonable factfinder could determine a causal link between Thomas's protected activity and her ultimate termination. *See Lord*, 839 F.3d at 564 (no causation where employee failed to sufficiently challenge employer's nonretaliatory reasons for termination); *see also Milliman v. Cnty. of McHenry*, 893 F.3d 422, 431 (7th Cir. 2018) (quoting *Massey v. Johnson*, 457 F.3d 711, 719 (7th Cir. 2006)) ("[S]ummary judgment should be granted when, in light of the defendant's unrebutted evidence, the court can say without reservation that a reasonable finder of fact would be compelled to credit the

17

employer's case on" its non-retaliatory explanation). Accordingly, the Court grants Ford's motion as to Count III.

### III.   Battery (Count IV) and Assault (V) are Preempted

Last, Ford contends that Thomas's claims for battery (Count IV) and assault (Count V) are preempted by the Illinois Workers' Compensation Act (IWCA). Memo. Summ. J. at 15.

The IWCA "preempts intentional tort claims against an employer unless the employer directs or expressly authorizes the intentional tort." *Allen v. Ford Motor Co.*, 2024 WL 1986004, at *2 (7th Cir. May 6, 2024) (citing *Meerbrey v. Marshall Field and Co., Inc.*, 564 N.E.2d 1222, 1226 (Ill. 1990)); *see also McPherson v. City of Waukegan*, 379 F.3d 430, 443 (7th Cir. 2004) (assault claim preempted where plaintiff presented "no evidence that the [employer] commanded or expressly authorized the assault"); *Carroll v. YMCA of Metro Chicago, LLC*, 2015 WL 149024, at *4 (N.D. Ill. Jan. 9, 2015) (quoting *Meerbrey*, 564 N.E.2d at 1227) ("Plaintiff's intentional tort claims are barred if they do not allege that the employer 'committed, or expressly authorized its agent to commit, an intentional tort.'").

Thomas makes the following allegations in support of her battery and assault claims: (1) Myron Alexander grabbed her hand to show her how to sand a car, DSOF ¶ 46; (2) Brian Hubbard bumped her as she was getting out of a car on the line, *id.* ¶ 47; and (3) a co-worker named Larry put his arm around her, *id.* ¶ 50. Ford argues Thomas has presented no evidence that Ford directed or expressly authorized any employee to inappropriately touch her. Memo. Summ. J. at 15. The Court agrees.

Thomas has not provided evidence that Ford intentionally inflicted, commanded, or expressly authorized her injuries. Further, Thomas's allegations that Ford failed to prevent her from being assaulted, Am. Compl. ¶¶ 78, 86, are insufficient to overcome preemption. *See Carroll*, 2015 WL 149024, at *4; *Grant v. Coken Co., Inc.,* 2005 WL 300388, *4 (N.D. Ill. Feb. 1, 2005) (the assertion that "knowledge coupled with lack of follow-up action is express authorization of injurious conduct . . . does not appear to be correct"); *Temores v. Cowen,* 289 F. Supp. 2d 996, 1007 (N.D. Ill. 2003) (quoting *Jaskowski v. Rodman & Renshaw, Inc.,* 813 F. Supp. 1359, 1362 (N.D. Ill. 1993)) ("[A] claim that management ignored evidence that the conduct was taking place is not sufficient; what is required is 'actual direction, encouragement, or participation' by management."). Accordingly, the Court finds the IWCA preempts Thomas's claims for battery and assault, and grants Ford's motion as to Counts IV and V.

## Conclusion

For the reasons set forth above, the Court grants Ford's motion for summary judgment. R. 51. The Court enters judgment in favor of Ford and against Thomas on Counts I, II, III, VI, and V. This civil case is terminated.

Dated: December 4, 2024

_____
United States District Judge
Franklin U. Valderrama

19